UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEWAYNE DUNN,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL SIGSBEE, et al.,<br><br>    Defendants. | Case No. 3:24-CV-601-CCB-JEM |

## OPINION AND ORDER

Before the Court is Defendants Vicki Becker and Dean Marks's motion to dismiss all of Plaintiff DeWayne Dunn's claims against them. (ECF 21). Defendant Scott Wagner also separately moves to dismiss Dunn's claims against him. (ECF 28). Defendant Michael Sigsbee has also moved to strike portions of Dunn's complaint. (ECF 19). Based on the applicable law, facts, and arguments, the motions to dismiss are granted in part and denied in part, and the motion to strike is denied.

### I. Relevant Background

On September 3, 2008, Dunn alleges that he and his neighbor and friend, Mr. Angel Torres, had an argument. During that argument, Torres allegedly hit Dunn with a baseball bat. Dunn alleges that Torres, who was heavily intoxicated, fell down the stairs. Two days later, Dunn died from his injuries. Dunn alleges that he did not push Torres, and that Dunn tried to assist Torres after he fell. Elkhart Police Department Officers arrived at the scene. Letha Sims, a witness to the incident who at the time resided with Dunn, allegedly confirmed Dunn's innocence to law enforcement. Sims reported hearing Dunn tell Torres to stop hitting him with a bat. Sims did not observe

Dunn strike Torres. Sims' teenage son, who also resided with Dunn and Sims, allegedly heard Dunn tell Torres to stop hitting him with the bat, saw Torres fall down the stairs, and did not observe Dunn strike Torres with any object. An autopsy performed by Dr. Blair Chrenka concluded that the manner of death was undetermined. Dunn alleges that non-defendant Elkhart officers who conducted the initial investigation believed that Torres's death was not the result of a homicide, but instead from an accidental fall.

Dunn alleges that Defendant Michael Sigsbee, a police officer with the Elkhart Police Department, was "desperate to close the investigation and frame Mr. Dunn for a crime he did not commit" and "sought out Letha Sims." (ECF 1 at 5). Dunn alleges that in March 2009, Sigsbee fed Sims false information, and pressured and coerced Sims into repeating that Sims had seen Dunn kick Torres. Dunn alleges that, at the time of the fabrication, Sigsbee had reviewed the investigative file and was aware of what Sims had truthfully informed law enforcement before, that Sims had told Sigsbee that she had observed Dunn trying to assist Torres, and that Sims repeatedly informed Sigsbee that she did not see Dunn kick Torres but instead observed Dunn trying to assist Torres after he fell. Despite Sims' repeated assertions that she did not see what Sigsbee was falsely telling her to state, Sigsbee "plowed forward with his fabrication." (*Id*. at 6).

Meanwhile, Dunn alleges that Defendant Vicki Becker, who was the deputy prosecutor in Elkhart County at that time, enlisted Defendant Dr. Wagner, a pathologist in Fort Wayne, Indiana, to fabricate an opinion that Torres's injuries could not have been caused by a fall down the stairs. (*Id*. at 6-7). Dunn alleges that Dr. Wagner fabricated an opinion that Torres's death was a homicide at the behest of Becker so that

2

Becker could initiate charges against Dunn. (*Id.* at 7). Dunn also alleges that Becker enlisted Defendant Dean Marks of the Indiana State Police's crime scene division to fabricate opinion evidence. In Marks's report, he opined that "blood from the scene was consistent with a bloody instrument having been swung or flung at Mr. Torres after he fell." (*Id.*) Dunn alleges that the Defendants knew that the opinion was false, and that Marks's report was also fabricated at Becker's behest so Becker could bring charges against Dunn. Based on the alleged fabricated evidence, Dunn was charged with murder on April 20, 2010, more than 19 months after Torres's death. (*Id.* at 8). Dunn alleges that the "State's theory of the case was that Mr. Dunn beat Mr. Torres to death at the bottom of the stairs with some unknown object that was never found." (*Id.*) Dunn alleges that the only evidence supporting the charges were the fabricated reports from Dr. Wagner and Marks, and the fabricated statement by Sigsbee from Sims. Dunn alleges that the Defendants knew there was no probable cause that Dunn had murdered Torres.

At Dunn's trial, Sims testified that she did not see Dunn strike Torres. The State's case allegedly then relied solely on evidence from Dr. Wagner and Marks, and by its impeachment of Sims with her allegedly fabricated statement from Sigsbee. Sims's son, who was also a witness at trial, testified that Torres had lost his balance and fell down the stairs. Dunn alleges that Becker invoked racist language to argue that Sims and her son, who are both Black, were liars. (*Id.*) Dunn, who is Black, alleges that Defendants' conspired to frame Dunn, and their conspiracy was, in part, racially motivated. Dunn

3

was ultimately convicted of murder based on what he alleges was false and fabricated evidence, and sentenced to 58 years' imprisonment. (*Id.* at 9).

Dunn filed a post-conviction petition in 2016. During that proceeding, a forensic pathologist, Dr. Sozio, concluded that Torres's injuries were consistent with a fall from height, not from a beating. In August 2022, the Seventh Circuit granted Dunn's habeas petition, and the State of Indiana dropped charges against Dunn on November 7, 2022. By that time, Dunn had served more than 12 years in prison. (*Id.* at 16). Dunn alleges that he "stands before this Court as Elkhart's sixth exoneree." (*Id.* at 9).

Dunn thus sued Sigsbee, Becker, Dr. Wagner, and Marks, all in their individual capacities, and the City of Elkhart. Dunn brings several claims under 42 U.SC. § 1983 against all Defendants: violation of his due process rights (Count I), deprivation of liberty without probable cause (Count II), failure to intervene (Count III), conspiracy to deprive Dunn of his constitutional rights (Count IV), and equal protection (Count V). Dunn also brings an intentional infliction of emotional distress claim against all Defendants. (Count X).[1]

Defendants Becker and Marks move to dismiss all claims against them. (ECF 21). Dr. Wagner separately moves to dismiss all claims against him. (ECF 28). In Dunn's response to the motions to dismiss, he agrees to dismiss his IIED claim. (ECF 32 at 6 n.1) ("Plaintiff concedes that his IIED claim is duplicative of his federal claims and agrees to the dismissal of Count X with prejudice."). Accordingly, Becker and Marks's motion to

---

[1] Dunn also asserts several claims against the City of Elkhart County, including a claim for *Monell* liability (Count VI), negligent hiring, training, and supervision (Count VII), breach of duty in hiring (Count VIII), and under the doctrine of respondeat superior (Count IX).

dismiss the IIED claim against them, as well as Dr. Wagner's motion to dismiss the IIED claim against him, are granted. The Court will only address the arguments raised in the motions to dismiss as to Dunn's § 1983 claims against Becker, Marks, and Dr. Wagner. Sigsbee also moves to strike portions of Dunn's complaint. (ECF 19). The Court will address each motion in turn.

## II. MOTIONS TO DISMISS

### a. STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007)); *accord McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2013) (a complaint "must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief"). "[A] formulaic recitation of the elements of a cause of action," and "naked assertions" without supporting facts are inadequate. *Id.* (quoting *Twombly*, 550 U.S. at 557). A complaint therefore fails to state a claim if it does not "describe the claim in sufficient detail to give the defendant fair notice of what the … claim is and the grounds upon which it rests [or] plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (internal quotations omitted).

When meeting this threshold, however, complaints "do not need to contain elaborate factual recitations." *Sanjuan v. Am. Bd. Of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Rather, at the motion to dismiss stage, the plaintiff

5

"receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Id.* A court cannot dismiss a complaint for failure to state a claim if, taking the facts pleaded as true, a plaintiff has "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. The court, however, is "not bound by a plaintiff's legal characterization of the facts or required to ignore facts set forth in the complaint that undermine a plaintiff's claim." *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 762–63 (N.D. Ill. 2011).

    b. ANALYSIS

        i. Becker and Marks's motion to dismiss (ECF 21)

Becker and Marks argue that they are both entitled to qualified immunity because Dunn fails to plausibly allege that they violated a constitutional right. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[T]he dispositive question" in determining whether a right is "clearly established" is "whether the violative nature of particular conduct is clearly established." *Ziglar*, 582 U.S. at 151 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "Because a qualified immunity defense so closely depends on the facts of the case, a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quotations and citation omitted).

6

Becker argues that Dunn's allegations amount only to "Becker's decision to enlist Wagner and Marks as expert witnesses and Marks offering his expert opinion that blood spatter from the scene was consistent with a bloody instrument having been swung or flung at Torres after he fell." (ECF 22 at 10). Dunn argues that his federal claims under § 1983 for violation of his due process rights, deprivation of his liberty without probable cause, failure to intervene to prevent the violation of his constitutional rights, conspiracy to violate his constitutional rights, and denial of Dunn's equal protection rights are each predicated on Becker and Marks allegedly fabricating evidence in his criminal prosecution.

The fabrication of evidence that is used to deprive the defendant of his liberty is a violation of a defendant's due process rights. *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012) (the Seventh Circuit has "consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of [his] liberty in some way"); *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) ("[A] government lawyer's fabricating evidence against a criminal defendant was a violation of due process.").

"In fabrication cases, the police or prosecutor manufactures evidence that he knows to be false." *Petty v. City of Chicago*, 754 F.3d 416, 422 (7th Cir. 2014) ("Fabricated testimony is testimony that is made up; it is invariably false. False testimony is the equivalent; it is testimony known to be untrue by the witness and by whoever cajoled or coerced the witness to give it.") (citation omitted). Fabricating evidence is conduct distinct from coercively interrogating witnesses, paying witnesses for testimony, and

7

witness-shopping—acts that do not give rise to a violation of a criminal defendant's due process rights. *Petty v. City of Chicago*, 754 F.3d 416, 422 (7th Cir. 2014). As the Seventh Circuit explained:

> [C]oercively interrogating witnesses, paying witnesses for testimony, and witness-shopping may be deplorable, and these tactics may contribute to wrongful convictions, but they do not necessarily add up to a constitutional violation even when their fruits are introduced at trial because evidence collected with these kinds of suspect techniques, unlike falsified evidence and perjured testimony, may turn out to be true.

*Petty*, 754 F.3d 416, 422 (7th Cir. 2014) (quotation omitted).

In support of Dunn's claims arising from Becker and Marks allegedly fabricating evidence, Dunn alleges that non-Defendant Elkhart officers conducted the initial investigation where they "pursued leads, conducting a serious investigation into the manner of death," and that based on the evidence obtained, "the officers believed that Mr. Torres' death was not the result of a homicide, but instead, was the product of an accidental fall by an intoxicated person." (ECF 1 at 5). The initial investigation also considered the autopsy results performed by a non-Defendant doctor who concluded that the manner of death was undetermined. Sims informed Elkhart police officers at the scene that she did not observe Dunn strike Torres with any object. Sims' son observed Torres fall down the stairs. (*Id*. at 4). Dunn, who is also Black, alleges that Defendants, including Becker and Marks, targeted Dunn because he is a Black male. Dunn alleges that Becker, while acting in an investigative capacity,[2] conspired with

---

[2] When a prosecutor acts as an investigator rather than an advocate, a prosecutor is not protected by prosecutorial immunity. *Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014) (When prosecutors' duties "go beyond the strictly prosecutorial to include investigation, and when they do non-prosecutorial work they lose their absolute immunity and have only the immunity, called 'qualified,' that other investigators enjoy when engaged in such work." ). Becker does not argue that she is entitled to prosecutorial immunity, so the Court does not address its applicability here.

8

Defendants, including Dr. Wagner and Marks, to fabricate false expert opinions in order to bring charges against Dunn. Dunn alleges that Becker and Marks knew that Dr. Chrenka's conclusion as to Torres's death "was uncertain," and that there was no probable cause. To initiate charges, Becker allegedly enlisted Wagner to manufacture a false opinion that Torres's death was a homicide, and enlisted Marks to provide a report falsely opining that the blood from the scene was consistent with a bloody instrument having been swung or flung at Mr. Torres after he fell. Dunn alleges that the Defendants, including Becker and Wagner, knew Dr. Wagner's opinion and Mark's report were fabricated. Dunn alleges that the fabricated opinions from Marks and Dr. Wagner, and the fabricated statement by Sigsbee from Sims, were the only evidence supporting probable cause against Dunn, and he was formally charged 19 months after Torres's death. Dunn alleges that the fabricated evidence resulted in a wrongful conviction and deprivation of his liberty by way of 12 years' imprisonment. Dunn alleges that the State's theory at trial was that Dunn beat Torres with a baseball bat, that the purported bat used was never found, and during his post-conviction proceedings, a forensic pathologist concluded that Torres's cause of death was from a fall, not from a beating.

    At this stage in the proceeding, taking Dunn's allegations as true and all reasonable inferences in his favor, Dunn plausibly alleges a due process violation arising from Becker's and Marks's fabrication of evidence. Moreover, it was clearly established at the time Dunn alleges the conduct occurred that a prosecutor or police officer fabricating evidence against a criminal defendant is a violation of due process.

9

*Whitlock*, 682 F.3d at 580) (fabricating evidence violates clearly established constitutional rights); *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) ("For it was established law by 1985 (indeed long before), when the fabrication is alleged to have occurred, that a government lawyer's fabricating evidence against a criminal defendant was a violation of due process.")

Accordingly, the Court finds that Dunn has plausibly alleged that Becker and Marks violated his constitutional rights by fabricating evidence, and that doing so violated a clearly established right. Becker and Marks's motion to dismiss Dunn's § 1983 claims based on qualified immunity is denied.

### ii. Dr. Wagner's Motion to Dismiss

Dr. Wagner separately moves to dismiss all claims against him. Dr. Wagner first argues that Dunn's failure to comply with Indiana's Medical Malpractice Act, which requires a claimant to first go through the medical review panel and obtain an opinion from that panel before bringing suit, precludes Dunn's federal claims under § 1983 against him.

Under Indiana's Medical Malpractice Act, with certain exemptions, "an action against a health care provider may not be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel…and (2) an opinion is given by the panel." Ind. Code § 34-18-8-4. Dr. Wagner is arguing, in essence, that Dunn has not exhausted his administrative remedies. *See Lease v. Myers*, 2012 WL 3961215, at *3 (N.D. Ind. Sept. 7, 2012) (plaintiff failed to exhaust his state law remedies by not filing a complaint with the medical review panel under Ind. Code § 34-

18-8-4). However, "the settled rule is that exhaustion of state remedies is *not* a prerequisite to an action under 42 U.S.C. § 1983." *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019) (emphasis in original) (quotations and citations omitted). Congress may require a plaintiff to exhaust administrative remedies before bringing constitutional claims, but the state may not do so. *Id.* at 195-96. Furthermore, under the supremacy clause of the Constitution, Indiana's Medical Malpractice Act cannot preclude Dunn's federal law claims pursuant to this Court's federal question jurisdiction under 28 U.S.C. § 1331. *See Smith v. Indiana*, 904 F. Supp. 877, 880 (N. D. Ind. 1995). Accordingly, Indiana's Medical Malpractice Act does not preclude Dunn from bringing his federal law claims against Dr. Wagner.

Dr. Wagner also asserts that he is entitled to qualified immunity because Dunn has failed to plead that Dr. Wagner violated Dunn's statutory or constitutional rights. Dunn's violation of due process, deprivation of liberty without probable cause, failure to intervene, conspiracy, and equal protection claims against Dr. Wagner are, like his claims against Becker and Marks, predicated on Dr. Wagner allegedly fabricating evidence. As discussed in the Court's analysis of Becker and Marks's motion to dismiss, fabricating evidence that is used to deprive a defendant of his liberty is a violation of that defendant's due process rights, and it was clearly established at the time that Dunn alleges that the conduct occurred that the fabrication of evidence is a due process violation. *Whitlock*, 682 F.3d at 580. "Fabricated opinion evidence, for which the expert might not have qualified immunity, must be both wrong and known to be wrong by the

11

expert." *Del Prete v. Vill. of Romeoville, Illinois*, No. 17-CV-6145, 2025 WL 446260, at *12 (N.D. Ill. Feb. 10, 2025) (quoting *Stinson v. Gauger*, 799 F.d 833, 843 (7th Cir. 2015)).

Dunn alleges that Dr. Wagner, a forensic pathologist, knew that a previous autopsy determined that Torres's death was "uncertain," and fabricated an opinion that Torres's injuries "could not have been caused by a fall down the stairs" and that "the manner of Mr. Torres's death was homicide." (ECF 1 at 6, 7). Dunn alleges that Dr. Wagner did so at the behest of Becker so Becker could initiate charges against Dunn. (ECF 1 at 7). Dunn also alleges that the Defendants, including Dr. Wagner, knew that Marks's report that the blood from the scene was consistent with a bloody instrument having been swung or flung at Torres after he fell was false. Dunn also alleges another forensic pathologist opined during his habeas proceeding that Torres died from an accidental fall and not a beating. Taking the allegations as true and all reasonable inferences in Dunn's favor, he plausibly alleges that Dr. Wagner fabricated evidence when he falsely opined that Torres died by homicide, that Dr. Wagner did so knowingly, that Dr. Wagner conspired with Becker to fabricate the report so Becker could bring charges against Dunn, and that the fabricated evidence resulted in Dunn serving 12 years' imprisonment. Whether the evidence will show that Dr. Wagner's opinion was both wrong and known to be wrong by Dr. Wagner is not for the Court to determine at the motion-to-dismiss stage. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir.2001) ("Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: The plaintiff is not required initially to plea factual allegations that anticipate and overcome a defense of qualified immunity.").

12

Next, Dr. Wagner argues that he is immune from suit under Ind. Code § 36-2-14-13. The statute provides that "[a] person who in good faith orders or performs a medical examination or autopsy under statutory authority is immune from civil liability for damages for ordering or performing the examination or autopsy." Ind. Code § 36-2-14-13. However, the Seventh Circuit held that:

> Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced.

*Hampton v. City of Chicago, Cook County, Ill.*, 484 F.2d 602, 607 (7th Cir.1973).

Accordingly, Dr. Wagner does not have immunity under Ind. Code § 36-2-14-13 as to Dunn's § 1983 claims. *See Finnegan v. Myers*, No. 3:08-CV-503, 2013 WL 359696, at *4 (N.D. Ind. Jan. 30, 2013) (immunity under Ind. Code § 36-2-14-13 did not extend to a § 1983 claim)).

### III.   SIGSBEE'S MOTION TO STRIKE

Sigsbee has also moved to strike two paragraphs in Dunn's complaint pursuant to Fed. R. Civ. P. 12(f). Under Rule 12(f), the court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Generally speaking, motions to strike portions of pleadings are disfavored as they consume scarce judicial resources and may be used for dilatory purposes." *Burton v. Gray*, 2012 WL 2284305, at *1 (N.D. Ind. June 18, 2012). "Motions to strike pleadings will generally be denied unless the portion of the pleading at issue is prejudicial." *Oswalt v. Rekeweg*, 2017 WL 5151205, at *1 (N.D. Ind. Nov. 7, 2017). The

13

decision of whether to strike material under Rule 12(f) is within the district court's discretion. *Id.*

Sigsbee moves to strike paragraphs 8 and 93 of Dunn's complaint, which allege:

> 8. Mr. Dunn spent more than 12 years incarcerated before he was exonerated in 2022.
>
> 93. Mr. Dunn stands before this Court as Elkhart's sixth exoneree.

(ECF 1 at 1, 9).

Sigsbee argues that Dunn was not exonerated because, after the Seventh Circuit affirmed that Dunn sufficiently demonstrated ineffective assistance of counsel, the Elkhart Circuit Court issued an order releasing Dunn but made no findings regarding Dunn's criminal culpability. Sigsbee argues that Dunn's "allegation that he has been exonerated by the post-conviction courts implies that the post-conviction courts found that the Defendants engaged in nefarious conduct when the PC courts made no such ruling or finding." (ECF 27 at 4). Dunn responds that he was wrongfully convicted for more than 12 years of his life, that his complaint seeks redress for the constitutional violations by the Defendants, and that Dunn was "innocent all along, which is why the State dismissed all charges after he was granted habeas relief." (ECF 26 at 2). Dunn also refers to the National Registry of Exonerations website which lists him as an exoneree.

At this stage of the proceeding, the Court finds that Dunn's references in his complaint to him being an exoneree are not redundant, immaterial, impertinent, scandalous, or prejudicial. Dunn alleges that he was wrongfully convicted, that the Defendants fabricated evidence, that the Elkhart Police Department has a history of police misconduct and corruption, and that the State did not pursue charges after his

14

habeas petition was affirmed by the Seventh Circuit. The parties' briefing underscores that whether Dunn was exonerated as alleged is a factual issue, and it is not appropriate to resolve at this stage in the proceeding. *See Riemer v. Chase Bank, N.A.*, 275 F.R.D. 492, 494 (N.D. Ill. 2011) ("A motion to strike under Rule 12(f) is not a mechanism for deciding disputed issues of law or fact, especially where, as here, there has been no discovery, and the factual issues on which the motion to strike largely depends are disputed.").

The Court therefore denies Sigsbee's motion to strike paragraphs 8 and 93 of Dunn's complaint.

### IV.  CONCLUSION

For the foregoing reasons, Defendants Becker and Marks's motion to dismiss (ECF 21), and Defendant Wagner's motion to dismiss (ECF 28) are **GRANTED IN PART AND DENIED IN PART**. The motions to dismiss are **GRANTED** as to Dunn's IIED claim, therefore the IIED claim against Defendants Becker, Marks, and Dr. Wagner is **DISMISSED** (Count X). Dunn's remaining claims against Defendants Becker, Marks, and Dr. Wagner may proceed. Defendant Sigsbee's motion to strike portions of Dunn's complaint (ECF 19) is **DENIED**.

SO ORDERED on September 15, 2025.

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT